UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____X

WILFRED McPHEARSON #93B1553, CARLTON
WALKER #85A1559, JEROME NISBETT
#94A4161, AND NAHSHON JACKSON
#95A2578, ON BEHALF OF THEMSELVES
AND ALL SIMILAR SITUATED
RASTAFARIANS,

                    Plaintiffs,

        - against -

NEW YORK STATE DEPARTMENT OF
CORRECTION AND COMMUNITY SUPERVISION;
ANTHONY J. ANNUCCI, Acting
Commissioner, JEFF McKOY, Deputy
Commissioner, Correctional Program
Services; CHERYL MORRIS, Director
of Ministerial, Family and Volunteer
Services; CENTRAL OFFICE REVIEW
COMMITTEE; KAREN R. BELLAMY,
Director, Inmate Grievance Program;
JEFFERY A. HALE, Assistant Director,
Inmate Grievance Program; KATHLEEN
K. GERBING, Superintendent, and
STACIE BENNETT, Deputy Superintendent
of Program, in their individual
and official capacities,

                  Defendants.

_____X



COMPLAINT

Index No.

CIVIL RIGHTS COMPLAINT WITH A JURY TRIAL DEMANDED
AND A REQUEST FOR CLASS CERTIFICATION

STATEMENTS OF JURISDICTION AND VENUE

1.    This is a Civil Right Action pursuant to 42 U.S.C. § 1983, against the above named defendants, who aided and abetted each other in the abrogation of the agreement D.O.C.C.S. made with the imprisoned Rastafarian Community during the court proceedings as reported in Benjamin v. Coughlin, 903 F.2d 571, 577-578 (2nd Cir. 1990), during the Rastafarians fight to have congregate religious services within D.O.C.C.S.

-1-

2.   The agreement which was in force for over two decades, permitted the plaintiffs and all similar situated Rastafarians to use wax candles and frankincense and myrrh as integrated parts of the rituals during congregate religious services.

3.   The defendants, while aiding and abetting each other in the abrogation of the agreement, completely destroyed the ritual for Rastafarian Congregate Religious Services, by removing the natural wax candles and replaced them with artificial candles, though D.O.C.C.S. had agreed for more than two decades, to the use of said natural wax candles as authorized by Biblical Scriptures, as oppose to artificial candles which has no spiritual significance to the imprisoned Rastafarians, and which has not been authorized by Scriptures, thus preventing the plaintiffs and all similar situated Rastafarians from practicing their religion in direct contravention of their religious rights guaranteed by the First Amendment of the United Stated Constitution and 42 U.S.C. § 2000cc-1.

4.   The abrogation of said agreement in question, also prohibits the plaintiffs and all similar situated Rastafarians from purchasing and using charcoal, frankincense and myrrh, to burn in the Rastafarians' censer during congregate religious services, and instead, imposed upon the plaintiffs and all similar situated Rastafarians, "one cone or two sticks of incense" to be used in congregate religious services, thus reducing what should have been meaningful and bona fide congregate religious services to nothing more than a meaningless ritual without spiritual significance in violation of the First Amendment of the United States Constitution, and 42 U.S.C. § 2000cc-1.

5.   This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(3) and (4).

6.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(b)(2), because the events giving rise to this action occurred at Otisville Correctional Facility, Otisville, New York, which is located within the Southern District of the State of New York.

## PARTIES AND ENTITIES TO THIS ACTION

Plaintiffs:

7.    WILFRED McPHEARSON #93B1553, CARLTON WALKER #85A1559, JEROME NISBETT #94A4161, and NAHSHON JACKSON #95A2578, are members of the Rastafarian religious faith, and are currently imprisoned at:

> Otisville Correctional Facility
> 57 Sanitorium Avenue
> P.O. Box 8
> Otisville, New York 10963

Defendants:

8.    ANTHONY J. ANNUCCI, Acting Commissioner of New York State Department of Correction and Community Supervision (D.O.C.C.S.), JEFF McKOY, Deputy Commissioner, Correctional Program Services; CHERYL MORRIS, Director of Ministerial, Family and Volunteer Services (M.F.V.S); KAREN R. BELLAMY, Director, Inmate Grievance Program; and JEFFERY A. HALE, Assistant Director, Inmate Grievance Program; in their individual and official capacities, are employees of the State of New York. Their respective offices and place of business are located at:

> The Department of Correction and Community Supervision
> The Harriman State Campus
> 1220 Washington Avenue
> Albany, New York 12226-2050

9.    KATHLEEN K. GERBING, Superintendent of Otisville Correctional

–3–

Facility, and STACIE BENNETT, Deputy Superintendent of Otisville Correctional Facility, in their individual and official capacities, are employees of the State of New York. Their respective offices and place of business are located at:

Otisville Correctional Facility
57 Sanitorium Avenue
Otisville, New York 10963.

STATEMENT OF FACTS AND LAWS CONCERNING CONGREGATE RELIGIOUS SERVICE

10. As early as February 27, 1986 during the Rastafarians struggle for D.O.C.C.S. to recognize Rastafarians belief system as a bona fide religion, the Court in deciding Overton v. Dept. of Correctional Services, 131 Misc.2d 295, 499 N.Y.S.2d 860, 863-864 (Sup.Ct. 1986), explained that: "Central to the Rastafarian belief system is the acceptance of the divinity of Haile Selassie characterized as the 'Living God' and the status of the believers as God's chosen people' (see, Smith, M.G., et at., 'The Rastafari Movement in Kingston, Jamaica,' University College of the West Indies, Institute of Social and Economic Research, 1960). '* * * Rastafari are not political rebels * * * there is a religious and spiritual basis for their entire belief system * * * the fundamental principles invoked in the holy scripture * * * are the backbone for their growing their hair in the long, natural dreadlocks' (Affidavit of Tracy Nicholas, 10/22/85)."

11. "The principal behavior, prohibitions and observances of the Rastafarian people are grounded in biblical passages together with the Ten Commandments (Smith, M.G., at et al, supra, at 10). 'The basic quest of Rasta is the maintenance, among all people, of divine principle of life. All these principles--honesty, loyalty, fear and

love of God, self-attainment-are laid down in the Bible and are not meant to be added to, diminished, or otherwise altered by man' (Nicholas, Tracy, Rastafari: A Way of life, Anchor Books, Garden City, N.Y., 1979)." 499 N.Y.S.2d at p. 863-864.


## CONGREGATED RELIGIOUS SERVICES

12. Following the Court's decision in the Overton's case, the basic foundation for Rastafarians Congregate Religious Services within D.O.C.C.S. concerning "the free-world sponsor requirement" was enunciated in Benjamin v. Coughlin, supra, 905 F.2d at p. 577-578 where the Court explained among other things that: "The sponsor requirement is said to be intended to ensure that the meeting is convened for religious purposes and not to hold kangaroo courts, foster extortion, or provide a venue for the dissemination of conspiratorial information. As well, the use of sponsor is thought to minimize conflicts among inmates as to the nature and content of the service. ... We ... are satisfied that the sponsor requirement meets the rational relationship and impact of accommodation prong of the Turner standard." Id. at p. 577-578.

13. The Court in the Benjamin case further explained that: "The plaintiffs argue that defendants have permitted the use of inmate Imams to conduct Muslim services and therefore they should be accorded the same privilege. This contention, however, fails to recognize the reason for the free-world sponsor requirement. It is not the presence or absence of the sponsor at the service that is the concern but rather the availability of an outside ministerial authority in religious matters."

-5-

14. The Court explained that "[t]he requirement of an outside resource is compelled by the defendants' concern that the authenticity of the service will be compromised or that particular religious issues may arise which cannot be resolved by DOCS staff. Thus, the defendant have expressed a rational basis for requiring outside sponsors even if the sponsors are not required to attend every service. The DOCS has an outside resource to contact with respect to Muslim and Buddhist services, and it indicated that it would 'allow Rastafarians to hold congregate services when and if ... an outside sponsor comes forth." Id. at .p 578.

15. Consistent with "the free-world sponsor requirement" as laid out in the Benjamin's case, the imprisoned Rastafarians within D.O.C.C.S. during 1991, contacted Ammanuel Foxe, a Rastafarian Elder and head of The Church of Haile Selassie I/Ba Beta Kristyan to be "the free-world sponsor". He agreed and met with the Rastafarians within various prisons throughout D.O.C.C.S..

16. Though most, if not all of the Rastafarian Brethrens who fought to have D.O.C.C.S. recognized Rastafarians as a bona fide religion considered themselves to be Nyahbinghi Sect, they nevertheless, agreed, as well as D.O.C.C.S. to accept the rituals offered by the Church of Haile SelassieI, as it was the only recognized Rastafarian ritual that would fit within D.O.C.C.S. security concern for Rastafarians Congregate Religious Services, as well as because the rituals fulfill the imprisoned Rastafarians spiritual needs.

17. In other words, the ritual and liturgical materials provided by The Church of Haile Selassis I for congregate religious services do not revolve around Abuna Foxe. The focal point of the ritual and liturgical materials is Emperor Haile Selassie I as The Living God,

Earth Rightful Ruler, Might of The Trinity, King of kings, Lord of lords, Conquering Lion of the Tribe of Judah.

18. The ritual including the burning of natural wax candles on the Taboo during congregate religious services. Attached here as Exhibit A, is page 3 of one of the Liturgical Books provided to the imprisoned Rastafarians and D.O.C.C.S. concerning the live wax candles. "The seven golden candle-sticks represent the center of the tabernacle worship instituted by JAH himself to Moses (Exodus 40:4, & 24-27). Rastalogy accepted this symbol as the establishment of the indigenous worshipping of JAH in the wilderness, fulfilling (Exodus 40: 34), worshipping the 'I AM.'"

19. Among other Biblical verses that are chanted during congregate services in relation to the burning of the wax candles is Psalm 68:1-4.

20. The ritual also including the burning of frankincense and myrrh on charcoal in the censer during congregate religious services. Attached herein as Exhibit B, is Page 11 of another one of the Liturgical Books concerning the Prayer of the Incense, which was provided to the imprisoned Rastafarian and D.O.C.C.S., which requires the Rastafarians during congregate religious service to invoke the blessing, guidance and protection of "Elohim Sabboath, through the use and offering "from me this Herb this grain of incense as the Earth is the [Lord] Adoniai and its' fullness thereof, let this Herb, this grain of incense become the Might of the Trinity – which will intercede for our salvation. O' Elohim Sabboath I offer unto thee incense with Herb, all my clothing smell of Herb and myrrh and aloes cassis. Let my prayer set before you as the Sun. Again I offer unto thee this

pure Herb and incense for the remission of my sin and sins and trespasses of thy people...."

21.  Thus, the ritual and liturgical materials provided by The Church of Haile Selassie I for congregate religious services "are laid down in the Bible and are not meant to be added to, diminished, or otherwise altered by man", let alone, D.O.C.C.S. or its employees. It is for this reason why Abuna Foxe and other representatives of the Church of Haile Selassie I, educated and trained many imprisoned Rastafarians in the use and burning candles; the use and burning charcoal and incense (frankincense and myrrh) in the censer as integrated parts of the rituals for congregate religious services.

22.  Each designated area of the prisons for congregated religious services is always manned by security personnel, who always examine the area prior and subsequent to service. Said security personnel are always vigilant outside and sometimes inside the services area. Thus, if any fire should start other than the candles or the charcoal and the incense in the censer, professional security personnel are always present, prior, during and subsequent to services.

23.  Abuna Foxe was eventually employed by D.O.C.C.S. as a Rastafarian Chaplain sometime in 1992 or 1993. He worked for D.O.C.C.S. as a Rastafarian Chaplain for more than two decades. During his employment with D.O.C.C.S., there were no issues of security concern raised dealing with the burning of wax candles, charcoal and frankincense and myrrh in the censer for congregate religious services.

24.  However, after Abuna Foxe demitted his Office as the Rastafarian Chaplain, the defendants, while aiding and abetting each other, completely destroyed the ritual for congregate religious

-8-

services, by removing natural wax candles and replaced them with artificial candles, though D.O.C.C.S. had agreed for more than two decades, to the use of said natural wax candles, as authorized by Biblical Scriptures, as oppose to artificial candles which has no spiritual significance to the imprisoned Rastafarians, and which have not been authorized by Scriptures.

25. The defendants also aided and abetted each other in prohibiting the plaintiffs and all similar situated Rastafarians from the purchase and use of charcoal, frankincense and myrrh, to burn in the Rastafarians' censer during congregate religious services, and instead, imposed upon the plaintiffs and all similar situated Rastafarians, "one cone or two sticks of incense" to be used in congregate religious services.

## EXHAUSTION OF THE GRIEVANCE PROCESS, BOTH FORMALLY AND INFORMALLY

26. Plaintiff McPhearson got transferred to the Otisville Correctional Facility in August of 2015, at which time he became the Rastafarian Clerk there, and subsequently became the Rastafarian Facilitator. During this time the Rastafarian Community were notified by the defendants through Deacon Bormann that charcoal and frankincense and myrrh can no longer be purchased and used in congregate religious services. Instead, the Rastafarians Community will have to use "one cone or two sticks of incense" for congregate religious services.

27. The Rastafarian Community was also notified by the defendants through Deacon Bormann, that it cannot use wax candles for congregate religious services, only artificial candles that are powered by batteries.

28. Each of Plaintiff McPhearson's purchase order for charcoals, frankincense and myrrh, as well as wax candles were denied.

29. The Rastafarian Community was informed by Deacon Bormann that Dr. Marcia Stewart ("Queen Mother Moses"), the new Rastasfarian Chaplain and Reverend Twymann would be visiting the Rastafarian Community at Otisville Correctional Facility on July 6, 2016.

30. The Rastafarian Community prepare a written agenda concerning issues it had wanted to discuss with Dr. Stewart and Rev. Twymann. A copy of said agenda is attached here as Exhibit C.

31. Among the issues the Rastafarian Community had wanted to discuss with Dr. Stewart and Rev. Twyman were; (a) the abrogation of the agreement D.O.C.C.S. made with the imprisoned Rastafarian Community during the court proceedings as reported in Benjamin, supra, during the Rastafarians fight to have congregate religious services within D.O.C.C.S.; (b) the prohibition from using wax candles during congregate religious services, and the imposition of artificial candles powered by batteries, and (c) the prohibition of frankincense and myrrh for congregate religious services, and the imposition of "one cone or two sticks of incense."

32. However, the Rastafarian Community was rebuffed by Dr. Stewart and Rev. Twyman, both of whom commented that per MFVS, Rastafarians cannot purchase frankincense and myrrh, nor wax candles, and can only use one cone or two sticks of incense for congregate religious services.

33. Decan Boremann was presented with a copy of the Rastafarian Community written agenda to be reviewed by Facility Personnel prior to the arrival of Dr. Stewart and Rev. Twyman. Also Dr. Stewart and

Rev. Twyman were also presented with their respective copies of the agenda. However, they both used up all the time talking and left no time for any discussion of the issues on the agenda.

34. Dr. Stewart and Rev. Twymann were very dismissive of every effort made by the Rastafarian Community to have a discussion with them concerning the unique issues of the Rastafarian Community.

35. In October of 2016, thirty one members of the Rastafarian Community at Otisville Correctional Facility, filed thirty one separate grievances concerning; (a) the abrogation of the agreement D.O.C.C.S. made with the imprisoned Rastafarian Community during the court proceedings as reported in Benjamin, supra, during the Rastafarians fight to have congregate religious services within D.O.C.C.S.; (b) the prohibition from using wax candles during congregate religious services, and the imposition of artificial candles powered by batteries, and (c) the prohibition of frankincense and myrrh for congregate religious services, and the imposition of "one cone or two sticks of incense."

36. The thirty one grievances were consolidated under Grievance No. 10831-16. See, e.g., Exhibit D.

37. LIST OF CONSOLIDATED GRIEVANT'S FOR GRIEVANCE OVF-10831-16

| | | |
|---|---|---|
| 1. | McPhearson | 93B1553 |
| 2. | Walker | 85A1559 |
| 3. | Nisbett | 94A4161 |
| 4. | Pack | 14A3827 |
| 5. | Jackson | 95A2578 |
| 6. | Murray | 98A1742 |
| 7. | Ledger | 08A3404 |
| 8. | Sheppard | 13B0593 |
| 9. | Sampson | 00A6230 |
| 10. | Reilly | 97A7337 |
| 11. | Snow | 94A2666 |
| 12. | Gilliam | 02A1262 |

| | | |
|---|---|---|
| 13. | Andrews | 12A3843 |
| 14. | Fagan | 95A3539 |
| 15. | Fagan | 14A0444 |
| 16. | Paul | 13A2124 |
| 17. | Pascal | 80B1082 |
| 18. | Boney | 12A5004 |
| 19. | Maharas | 01A3424 |
| 20. | Foster | 05A4211 |
| 21. | Wallace | 09A2300 |
| 22. | Banks | 87A1614 |
| 23. | Grant | 91A0137 |
| 24. | Levers | 89A5723 |
| 25. | Philpotts | 07A5430 |
| 26. | Casimir | 14A5132 |
| 27. | Alexander | 83B2845 |
| 28. | Husband | 08A5839 |
| 29. | Sylvestre | 10A3731 |
| 30. | Johnson, T. | 13A3959 |
| 31. | Butcher | 11A1367 |

38.  At the Grievance Hearing, Facility personnel presented a decision dated May 13, 2015, made by Central Office Review Committee, under Grievance Number OVF-10240-15, and electronically signed by defendant Jeffery A. Hale. A portion of said decision read as follows:

"CORC notes that one cone or two sticks of incense may be used during congregate worship, and that frankincense and myrrh are acceptable in accordance with the 2015 Religious Holy Day Calendar. It is also noted that two electric candles may be used during congregate worship, and may be substituted by candles with flame only if staff or volunteers are officiating. CORC has not been presented with any compelling reason to revise present procedures and finds insufficient evidence that the greivants religious rights were violated." See Exhibit E

39.  Also at the Grievance Hearing, a written memo issued by defendant Dep. Bennett stated that on October 28, 2016, plaintiff McPhearson was told to purchase cone, incense and charcoal, as frankincense and myrrh were not allowed.

40.  On November 9, 2016, the Grievance Committee response as follows: "Actions requested are not the purview of this Facility or

any other, but must be addressed through Central Office." Each of the grievant disagreed with the IGRC response and appeal to the Superintendent. Exhibit F.

41.  The Superintendent issue a written decision dated November 15, 2016, part of which reads as follows:

> "This topic has been answered at both the facility level and CORC in OVF-10240-15. As such, this grievance has no merit at the facility level. The policy and procedure regarding the use of religious items used in Rastafarian services is outlined in the Religious Holy Day Calendar as published by the Division of Ministerial, Family and Volunteer Services. This publication clearly outlines approved items for use in each religious service. Per CORC, it is noted that two electric candles may be used during congregate worship, and may be substituted by candles with flames only if staff or volunteers are officiating." A copy of said decision is attached here as Exhibit G.

42.  Timely appeal has been filed from said decision of the Superintendent. See Exhibit G, supra.


RELIGIOUS PROTOCOL FOR CONGREGATE SERVICES AND HOLY DAYS' EVENTS

43.  The plaintiffs are permitted to hold congregate religious services each Fridays between the hours of 12:30 P.M. and 3:30 P.M. at the Otisville Correctional Facility.

44.  There are religious protocols which have to be done each Friday between 10:00 A.M. and 11:00 A.M. at the designated religious area in order to clean and prepare it for the congregated services. Included in the protocol are; (a) the burning of wax candles in their stand on the Taboo in front of His Majesty's Itrait; and (b) the burning of frankincense and myrrh in the censer to bless and seal the four corners of the religious area, as well as to bless each of

the persons who will be officiating the service, along with the religious attires and all the religious symbols in the area and those on the Taboo.

45. During the congregate religious services, the wax candles are lit on the Taboo in front of His Majesty's Itrait. Psalms 68:1-4 is also chanted along with other Psalms.

46. Each of the congregated religious services are commenced with the burning of frankincense and myrrh in the censer, along with the chanting of prayers to bless the entire religious area, the religious symbols and everyone in attendance, their family friends and all things visible and invisible. The prayer of the incense on Page 11 of the Liturgical Book is also chanted.

47. The censer is than placed on the Taboo where it remain lit with the burning of the frankincense and myrrh until it is again used to bless every one in attendance to conclude the service.

48. In addition to the congregated religious services each Fridays, the plaintiff's are permitted at the Otisville Correctional Facility, to observe and celebrate a total of twelve Rastafarians Holy Days. Those twelve Holy Days are; (a) January 7, Ethiopian Christmas; (b) March 1, Battle of Adwa Victory; (c) April 3, Holy Mother Empress Menen Day; (d) April 21, Grounation Day aka Grounddation Day; (e) May 5, Liberation Day aka Fasika (Passover); (f) May 25, Africa Day; (g) June 16, Patriarch Leonard Percival Howell Day; (h) July 16, Constitution Day; (i) July 23, RasMas (Christmas in July); (j) August 17, Prophet Marcus Mosiah Garvey's Birthday; (k) October 7, Nequest Day/Negus Day aka Chirst in His Kingly Character; and (l) November 2, Coronation Day aka Transfiguration Day. See Exhibit H.

49. Each of those Holy Days celebration is preceded with the same protocols and religious rituals with the burning of wax candles and the burning of the frankincense and myrrh in the censer.

50. At each of the Holy Day events, all the food and beverage are bless by the use of the frankincense and myrrh burning in the censer.

## FIRST CAUSE OF ACTION

51. The plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

52. The defendants aided and abetted each other in the abrogation of the agreement D.O.C.C.S. made with the imprisoned Rastafarian Community during the court proceedings as reported in Benjamin, supra, during the Rastafarians fight to have congregate religious services within D.O.C.C.S.

53. The abrogation of the agreement was done without consultation with the imprisoned Rastafarians, and without due process of law, in violation of the rights of the plaintiffs and all similar situated Rastafarians, guaranteed by the First and Fourteenth Amendment of the United States Constitution.

## SECOND CAUSE OF ACTION

54. The plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

55. The defendants, while aiding and abetting each other in the abrogation of the agreement, completely destroyed the ritual for congregate religious services and Holy Days celebrations, by removing the natural wax candles and replaced them with artificial candles

which are powered by batteries, which have no spiritual significance to the imprisoned Rastafarians, though D.O.C.C.S. had agreed for more than two decades, to the use of said natural wax candles, as authorized by Biblical Scriptures, thus preventing the plaintiffs and all similar situated Rastafarians from practicing their religion in direct contravention of the First Amendment of the United States Constitution and the religious Land Use and Institutionalized Protection Act (RLUIPA) codified in 42 U.S.C. § 2000cc-1.

## THIRD CAUSE OF ACTION

56. The plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

57. The burning of waxed candles on the Taboo in front of His Majesty's Itrait with the wax melting down on the sides of the candles, is a part of the spiritual protocol which provide the plaintiffs and similar situated Rastafarians with; (a) spiritual comfort; (b) spiritual growth; (c) spiritual accomplishment; and (d) it symbolize spiritual enlightenment.

58. Notwithstanding the spiritual protocol, and what it mean and symbolize to the plaintiffs and similar situated Rastafarians, the defendants are aiding and abetting each other in the enforcement of the decision which stated that "congregate worship ... may be substituted by candles with wax only if staff or volunteers are officiating".

59. By the defendants aiding and abetting each other in the enforcement of said decision, they are ignoring the fact that the

Benjamin case has explained the great difficulties which D.O.C.C.S. and the imprisoned Rastafarians had been through in order to find a person to be the Free-World Sponsor, and that it had been determined more than two decades ago in the Benjamin case, that: "It is not the presence or absence of the sponsor at the service that is the concern but rather the availability of an outside ministerial authority in religious matters."

60. The defendants knew, prior, during and subsequent to their decision in question, that even before the Abuna dimitted office, that the imprisoned Rastafarians do not have any "staff or volunteers" to officiate congregate religious services.

61. Thus, by now declaring that "congregate worship ... may be substituted by candles with wax only if staff or volunteers are officiating", with the full knowledge that there has never been any staff or volunteers available to officiate, except when Abuna or his assistance would sporadically showed up at certain facilities for services, not only constitute a complete ban on the plaintiffs and similar situated Rastafarians spiritual protocol to burn waxed candles on the Taboo in front of His Majesty's Itrate prior and during congregate religious services, as well as on holy days events, but the decision is substantially burdening the practice of core tenets of the plaintiffs faith and belief, all in violation of the First Amendment and RLUIPA.

62 Said decision by the defendants which deprived and continuing to deprive the plaintiffs and other similar situated Rastafarians of their spiritual protocol, has also been depriving them of their; (a) spiritual comfort; (b) spiritual growth; (c) spiritual

accomplishment; and (d) that which symbolize spiritual enlightenment, all in violation of the First Amendment of the United States Constitution and RLUIPA.

## FOURTH CAUSE OF ACTION

63. The plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

64. The burning of the candles on the Taboo in front of His Majesty's Itrate with the wax melting down on the side of the candles, not only provide the plaintiffs and similar situated Rastafarians with spiritual nourishment to fulfill their spiritual needs, but it also serve as the umbilical cord which connect them to each other, the universe and their True and Living God, JAH, RastafarI, to seek His counseling, guidance, blessing and protection.

65. Therefore, the decision "that two electric candles may be used during congregate worship and may be substituted by candles with flame only if staff or volunteer are officiating", not only kept and continuing to keep the plaintiffs and similar situated Rastafarians spiritually undernourished, but said decision severed the spiritual umbilical cord which was connecting the plaintiffs and similar situated Rastafarians to each other, the universe and their True and Living God, JAH RastafarI, thereby preventing them from obtaining His guidance, protection, blessing and counseling, thus violating the First Amendment of the United Stated Constitution and RLUIPA.

## FIFTH CAUSE OF ACTION

66. The plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

67. The abrogation of said agreement in question, also prohibits

the plaintiffs and all similar situated Rastafarians from the purchase and use of charcoal, frankincense and myrrh, to burn in the Rastafarians' censer during congregate religious services and Holy Days events, and instead, imposing upon the plaintiffs and all similar situated Rastafarians, "one cone or two sticks of incense" to be used in congregate religious services, thus reduced what should have been meaningful and bona fide congregate religious services and Holy Days events to nothing more than meaningless rituals without spiritual significance in direct contravention of the First Amendment of the United States Constitution and 42 U.S.C. § 2000cc-1 "RLUIPA".

<u>SIXTH CAUSE OF ACTION</u>

68. The plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

69. The defendant, while aiding and abetting each other, continue to ignore the fact that the "one cone or two sticks of incense" as oppose to frankincense and myrrh is not an acceptable part of the pure ingredient of the religious ritual of the Church of Haile Selassie I.

70. The defendants continue to ignore the fact that neither D.O.C.C.S. nor its entities or personnel posses the religious authority to change the religious ritual which the plaintiffs and similar situated Rastafarians chose to follow and practice due to the strength of its spiritual significance during congregate religious services, and then impose that change upon the plaintiffs and similar situated Rastafarians. To do so also violated the establishment clause of the First Amendment of the United State Constitution and also violated RLUIPA.

71. None of the video tapes and liturgical material provided to D.O.C.C.S. and the imprisoned Rastafarian by the Church of Haile Selassie I concerning congregate religious services, revolve around "one cone or two sticks of incense" to be used by imprisoned Rastafarians in congregate religious services.

72. The "one cone or two sticks of incense" which the defendants are imposing upon the plaintiffs and similar situated Rastafarians are inconsistent with the Prayer of the Incense as laid out on Page 11 of the Liturgical Book, in which the plaintiffs and similar situated Rastafarians are required to invoke the blessing, guidance and protection of "Elohim Sabboath", through the use and offering "from me this 'Herb this grain of incense as the Earth is the [Lord] Adoniai and its' fullness thereof, let this Herb, this grain of incense become the Might of the Trinity – which will intercede for our salvation. O'Elohim Sabboath I offer unto thee incense with Herb, all my clothing smell of Herb and myrrh and aloes cassis. Let my prayer set before you as the Sun. Again I offer unto thee this pure Herb and incense for the remission of my sin and sins and trespasses of thy people..."

73. The defendants know the distinguishable difference between "grain of incense" and "pure Herb and incense", and how "the grain of incense" is used during congregate religious services on the one hand, and "one cone or two sticks of incense" on the other hand.

74. The "one cone or two sticks of incense cannot work with the Prayer of the Incense. They are like oil and water which never mix.

75. The Prayer of the Incense does not authorize the plaintiffs and similar situated Rastafarians to ask Elohim Sabboath to accept

"one cone or two sticks of incense" to "become the Might of the Trinity — which will intercede for our salvation". Thus, the defendants violated the First Amendment of the United States Constitution, as well as RLUIPA, by their imposition of "one cone or two sticks of incense" upon the plaintiffs and similar situated Rastafarians.

76. The Prayer of the Incense does not authorize the plaintiffs and similar situated Rastafarians to offer "one cone or two sticks of incense" "for the remission of my sin and sins and trespasses of thy people." Thus, the defendants violated the First Amendment of the United States Constitution, as well as RLUIPA, by their imposition of "one cone or two sticks of incense" upon the plaintiffs and similar situated Rastafarians.

## SEVENTH CAUSE OF ACTION

77. The plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

78. The burning of frankincense and myrrh in the censer for congregate religious services and holy days events is a part of the spiritual protocol which provide the plaintiffs and similar situated Rastafarians with; (a) spiritual comfort; (b) spiritual growth; (c) spiritual accomplishment; and (d) it symbolize spiritual enlightenment.

79. Notwithstanding the spiritual protocol, and what it mean and symbolize to the plaintiffs and similar situated Rastafarian, the defendants are aiding and abetting each other in the enforcement of the decision which stated "that one cone or two sticks of incense may be used during congregate worship, and that frankincense and myrrh

-21-

are acceptable in accordance with 2015 Religious Holy Day Calendar", thus violating the First Amendment of the United State Constitution, as well as RLUIPA.

## EIGHT CAUSE OF ACTION

80. The plaintiffs repeat and reallege the foregoing paragraphs as if the same were fully set forth at length herein.

81. The burning of the frankincense and myrrh in the censer during congregate religious services and holy days events, not only provide the plaintiffs and similar situated Rastafarians with spiritual nourishment to fulfill their spiritual needs, but it also serve as the umbilical cord which connect them to each other, the universe and their True and Living God, JAH, RastafarI, to seek His counseling, guidance, blessing and protection.

82. Therefore, the decision which prohibit the use of frankincense and myrrh and imposed one cone or two sticks of incense, not only kept and continuing to keep the plaintiffs and similar situated Rastafarians spiritually undernourished, but said decision severed the spiritual umbilical cord which was connecting the plaintiffs and similar situated Rastafarians to each other, the universe and their True and Living God, JAH RastafarI, thereby preventing them from obtaining His guidance, protection, blessing and counseling, thus violating the First Amendment of the United Stated Constitution and RLUIPA.

<u>NO LEGITIMATE PENOLOGICAL INTEREST TO VIOLATE PLAINTIFFS RIGHT</u>

83.  The defendants may want to hide behind security concerns in order to justify the abrogation of their agreement, and the subsequent violations of the rights of the plaintiffs and similar situated Rastafarians, but any such argument would be futile, as the defendants with their great wisdom, along with their more than qualified experts, could have taken the appropriate steps during those more than two decades to rectify any such security concerns without the abrogation of the agreement and the subsequent violation of the rights of the plaintiffs and similar situated Rastafarians.

84.  The defendants may also want to argue that it had consulted with Rastafarian Elders and other experts before it decided to abrogate the agreement and subsequently violated the rights of the plaintiffs and similar situated Rastafarians, but such argument would be futile, as there are many who call themselves Rasta, yet not seeing Emperor Haile Selassie I as the True and Living God. Therefore, they will never, and will not be able to see, feel or understand our connection with JAH Rastafari, the Universe and to each other through our religious protocol and tenets.

85.  The defendants may also want to argue that it had consulted with the current Rastafarian Chaplain or other Rastafarian authority to seek their approval in the abrogation of the agreement and the subsequent violations of the rights of the plaintiffs and similar situated Rastafarians, but such argument would be equally futile, as the Lower Court in <u>Benjamin v. Coughlin</u>, 708 F. Supp. 570 (S.D.N.Y. 1989) clearly stated that the reasons for the outside sponsor: "Is not to enforce doctrinal conformity ... but to assure that the inmates

meeting serves its professed religious purposes. ..."

86. Thus, any agreement with the abrogation of the agreement and the subsequent violation of the rights of the plaintiffs and similar situated Rastafarians, is clearly an agreement that the current so called religious services are not serving their "professed religious purposes".

RELIEF REQUESTED

WHEREFORE, the plaintiff request the Court grant the following:

1. Declaratory Judgment, declaring that the defendants individually and collectively, and while aiding and abetting each other, abrogated the agreement D.O.C.C.S. made with the imprisoned Rastafarinan Community during the court proceedings as reported in Benjamin, supra, during the Rastafarians fight to have congregate religious services within D.O.C.C.S.

2. Declaratory Judgment, declaring that the defendants' abrogation of the agreement was done without consultation with the imprisoned Rastafarians, in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution.

3. Declaratory Judgment, declaring that the defendant individually and collectively, and while aiding and abetting each other, have violated, and continue to violate the plaintiffs and similar situated Rastafarians rights under the Establishment and Free Exercise Clauses of the First Amendment of the United States Constitution.

4. Declaratory Judgment, declaring that the defendants,

individually and collectively, and while aiding and abetting each other, have violated and continue to violate RLUIPA as codified in 42 U.S.C. § 2000cc-1.

5. Declaratory Judgment, declaring that the plaintiffs have met the requirement under Rules § 23 of the Federal Rules of Civil Procedure, to proceed as a Class in this action.

6. Declaratory Judgment, declaring the appointment of counsel pursuant to Rule 23 of the Federal Rules of Civil Procedure, to represent the plaintiffs and similar situated Rastafarians in this action.

7. A preliminary and permanent injunction, enjoining the defendants from continuing their abrogation of the agreement D.O.C.C.S. made with the imprisoned Rastafarian Community during the court proceedings as reported in Benjamin, supra.

8. A preliminary and permanent injunction, enjoining the defendant from enforcing their decision which prohibit the use of wax candles and frankincense and myrrh during congregate religious services and holy days events.

9. Compensatory damage against each of the defendants in the amount of 100,000,000.00

10. Punitive damages against each of the defendants in the amount of 150,000,000.00

11. Issue such other and further relief as the Court deems just and proper.

We, the undersigned plaintiffs, Welfred McPhearson, Carlton Walker, Jerome Nisbett and Nahshon Jackson, declare under the penalty of perjury that the contents of the foregoing Complaint and attached exhibits are true and correct.

Executed on this __14th__ day of December, 2016

SUBMITTED BY:

Wilfred McPhearson #93B1553
Otisville Correctional Facility
57 Sanitorium Avenue
P.O. Box 8
Otisville, New York 10963

SUBMITTED BY:

Carlton Walker #85A1559
Otisville Correctional Facility
57 Sanitorium Avenue
P.O. Box 8
Otisville, New York 10963

SUBMITTED BY:

Jerome Nisbett  94A4161
Otisville Correctional Facility
57 Sanitorium Avenue
P.O. Box 8
Otisville, New York 10963

SUBMITTED BY:

Nahshon Jackson #95A2578
Otisville Correctional Facility
57 Sanitorium Avenue
P.O. Box 8
Otisville, New York 10963

# EXHIBIT

# A

# DETAILED MEANING OF SYMBOLS

## (1) The circle



Represents the symbol of Creator, "The Infinite", the nameless One, the Alpha and Omega, the First cause, the First and the Last, Protector of all humans faith.

## (2) The seven golden candle-sticks



Represent the centre of the tabernacle worship instituted by JAH himself to Moses (Exodus 40: 4, & 24-27) Rastalogy accepted this symbol as the establishment of the indigenous worshipping of JAH in the wilderness, fulfilling (Exodus 40: 34, worshipping the "I AM".

## (6). The equilateral triangle



represents the visible figure through which man could see and understand the conception of a "Triune God". These three (3) attributes form the first "Trinity" and established the original conception of a "Trinity", thereby consolidating the doctrine of the Holy Trinity with Emperor Haile Selassie I. As the centre of the Trinity: "The Mighty of the Trinity", the personification of ElcBay Elohim Cybayim (The Living God) that dwells amongst man on earth.

## (7). The symbol of the Lion

represents the Tribe of Judah, from which the "Christ, the "Anointed One", or the "Messiah" should emerge, as the master of the ages: Jesus the Christ, the seventy-first (71) master of the age: (Rev.5:5)- the lion of the Tribe of Judah

# EXHIBIT

# B

# The Church of Haile Selassie I

## PRAYER OF THE INCENSE (Rasta Priest)

O' Elohim Sabboath eternal God as thou was well pleased with the offering of Abel thy beloved, the sacrifice of Enoch and Noah and of Abraham, and the incense of Aaron and Zacharias, in like manner accept from me this "Herb" this grain of incense as the Earth is the Adonai and its' fullness thereof, let this Herb, this grain of incense become the Might of the Trinity – which will intercede for our salvation.

O' Elohim Sabboath I offer unto thee incense with Herb, all my clothing smell of Herb and myrrh and aloes cassis. Let my prayer set before you as the Sun. Again I offer unto thee this pure Herb and incense for the remission of my sin and sins and trespasses of thy people. For blessed and full of glory is thy Holy name Haile Selassie I. O' I' Abb Woweld Wementes Kidus both now and ever world without end. Amen. Amen. Amen.

*Haile Selassie I Liveth!*

11

# EXHIBIT

# C

# OTISVILLE  CORRECTIONAL  FACILITY

### RASTA AGENDA  FOR July 6, 2016

## ISSUES PRESENTED FOR DISCUSSION

**A.** Cold Alternative Diet not being offered to RASTA after approved by Central Office.

**B.** Official King James Version Bible Universally used by RASTA

**C.** Approved Vendors for RASTA purchases

**D.** Religious garments for RASTA PRIEST/LEVITES

**E.** RASTA Instruments.

**F.** Videos (Religious /Spiritual/Education)

**G.** Educational Material (Books/ Newspapers/Magazines)

**H.** Correspondence Course for Rastalogy taught at RASTA Universities (West Indies /US)

**I.** Approved  gathering  for commemoration of founding fathers of "RASTAFARI"

**J.** Community out reach.

# EXHIBIT

# D

FORM 2131E (REV. 6/06)

STATE OF NEW YORK · DEPARTMENT OF CORRECTIONAL SERVICES
INMATE GRIEVANCE COMPLAINT

Reinstate Use of Charcoal
& Live Candles

Grievance No.

16

10831-16
Consolidated

Otisville
_____ CORRECTIONAL FACILITY

Name Carlton Walker

Date 10/25/16

Dept.No. 85A1559 Housing Unit 111 17

Program Porter    (AM) Porter    (PM

*(Please Print or Type - This form must be filed within 21 calendar days of Grievance Incident)*

Description of Problem: (Please make as brief as possible)

See Attach

Grievant
Signature Carlton Walle

Grievance Clerk _____ Date: 10/25/16

Advisor Requested ☐ YES ☐ NO   Who: _____

Action requested by inmate: See Attach

This Grievance has been informally resolved as follows:

This Informal Resolution is accepted:
(To be completed only if resolved prior to hearing)

Grievant
Signature _____ Date: _____

If unresolved, you are entitled to a hearing by the Inmate Grievance Resolution Committee (IGRC).
*An exception to the time limit may be requested under Directive #4040, section 701.6(g).

## GRIEVANCE COMPLAINT

1.  Please consider this as my Grievance Complaint against the Department of Correction and Community Supervision and its employees for violating the agreement it made with the Rastafarian Community which fought to have Congregate Religious Services within D.O.C.C.S.

2.  D.O.C.C.S. violated said agreement without consultation with the Rastafarian Community, and without due process of law, in direct contravention of the First and Fourteenth Amendment of the United States Constitution, as well as various articles of New York State Constitution and laws.

## FACTS AND LAWS

3.  As early as February 27, 1986 during the Rastafarian struggle for D.O.C.C.S. to recognize Rastafarian as a bona fide religion, the Court in deciding Overton v. Dept. of Correctional Services, 131 Misc.2d 295, 499 N.Y.S.2d 860, 863-864 (Sup.Ct. 1986), explained that: "Central to the Rastafarian belief system is an acceptance of the divinity of Haile Sealssie characterized as the 'Living God' and the status of the believers as God's chosen people' (see, Smith, M.G., et al., 'The Rastafari Movement in Kingston, Jamaica,' University College of the West Indies, Institute of Social and Economic Research, 1960). '* * * Rastafari are not political rebels * * * there is a religious and spiritual basis for their entire belief system * * * the fundamental principles invoked in the holy scripture * * * are the backbone for their growing their hair in the long, natural dreadlocks' (Affidavit of the Tracy Nicholas, 10/22/85).'

4.  "The principal behavior, prohibitions and observances of the Rastafarian people are grounded in biblical passages together with the Ten Commandments (Smith, M.G., et al, supra, at 10). 'The basic quest of Rasta is the maintenance, among all people, of divine principle of life. All of these principles--honesty, loyalty, fear and love of God, self-attainment-are laid down in the Bible and are not meant to be added to, diminished, or otherwise altered by man' (Nicholas, Tracy, Rastafari: A Way of Life, Anchor Books, Garden City, N.Y., 1979)." 499 N.Y.S.2d at p. 863-864.

CONGREGATED RELIGIOUS SERVICES

   5.   Following the Court's decision in Overton, the basic
foundation for Rastafarian Congregate Religious Services within
D.O.C.C.S. concerning "the free-world sponsor requirement" was
enunciated in Benjamin v. Coughlin, 905 F.2d 571, 577-578 (2d Cir.
1990) where the Court explained among other things that: "The sponsor
requirement is said to be intended to ensure that the meeting is
convened for religious purposes and not to hold kangaroo courts, foster
extortion, or provide a venue for the dissemination of conspiratorial
information. As well, the use of sponsors is thought to minimize
conflicts among inmates as to the nature and content of the service.
... We ... are satisfied that the sponsor requirement meets the
rational relationship and impact of accommodation prong of the Turnor
standard." Id at p. 577-578.


   6.   "The plaintiffs argue that defendants have permitted the
use of inmate Imans to conduct Muslim services and therefore they
should be accorded the same privilege. This contention, however, fails
to recognize the reason for the free-world sponsor requirement. It
is not the presence or absence of the sponsor at the service that
is the concern but rather the availability of an outside ministerial
authority in religious matters.


   7.   The requirement of an outside resource is compelled by the
defendants' concern that the authenticity of the services will be
compromised or that particular religious issues may arise which cannot
be resolve by DOCS staff. Thus, the defendant have expressed a rational
basis for requiring outside sponsors even if the sponsors are not
required to attend every service. The DOCS has an outside resource
to contact with respect to Muslim and Buddhist services, and it
indicated that it would 'allow Rastafarian to hold congregate services
when and if ... an outside sponsor comes forth." Id. at p. 578.


   8.   Consistent with "the free-world sponsor requirement" as
laid out in Benjamin v. Coughlin, supra, the imprisoned Rastafarian
within D.O.C.C.S. in 1991, contacted Ammanuel Foxe, a Rastafarian

Elder and head of The Church of Haile Selassie I/Ba Beta Kristiyan to be "the free-world sponsor". He agreed and met with the Rastafarian within various prisons throughout D.O.C.C.S..

9.    Though most, if not all of the Rastafarians Brethrens who fought to have D.O.C.C.S. recognized Rastafarians as a bona fide religion considered themselves to be Nyahbinghi Set, they agree, as well as D.O.C.C.S., to accept the rituals offered by the Church of Haile Selassie I, as it was the only Rastafarian ritual that would fit within D.O.C.C.S. security concern for Rastafarian Congregate Religious Services, as well as because the rituals fulfill the imprisoned Rastafarians spiritual needs.

10.    In other words, the ritual and liturgical materials provided by the Church of Haile Selassie I do not revolve around Abuna Foxe. The focal point of the ritual and liturgical materials is Emperor Haile Selassie I as The Living God, Earth Rightful Ruler, Might of The Trinity, King of kings, Lord of lords, Conquering Lion of the Tribe of Juda.

11.    Thus, the rituals and liturgical materials provided by The Church of Haile SealassieI for Congregate Religious Services "are laid down in the Bible and are not meant to be added to, diminished, or otherwise altered by man", let alone, D.O.C.C.S.. It is for this reason why Abuna Foxe and other representatives of the Church of Haile Selassie I, educate and trained many imprisoned Rastafarians in the use and burning of candles; the use and burning charcoal and incense in the Censer as an integrated part of the ritual for Congregate Religious Service.

12.    Each designated area of the prison for congregated religious services is always manned by security personnel, who always examine the area prior and subsequent to services. Said security personnel are always vigilant outside and sometimes inside the services area. Thus, if any fire should start other than the candle or the charcoal and the incense in the Censer, professional security personnel are

always present, prior, during and subsequent to services.

13. Abuna Foxe was eventually employed by D.O.C.C.S. as a Rastafarian Chaplain sometime in 1992 or 1993. He worked for D.O.C.C.S. as a Rastafarian Chaplain for more than two decades. During his employment with D.O.C.C.S., there were no issues of security concern raised dealing with the burning of candles, charcoal and incense in the Censer.

## VIOLATION OF AGREEMENT AND INJURY TO RASTAFARIAN

14. However, after Abuna Foxe demitted his Office as the Rastafarian Chaplain, D.O.C.C.S. completely destroyed the ritual for Rastafarian Congregate Religious Services, by removing the natural candles and replaced them with artificial candles, though it had agreed for more then two decades, to the use of said natural candles, as authorized by Biblical Scriptures, as oppose to artificial candles which has no spiritual significance to the imprisoned Rastafarian, and which has not been authorized by Scriptures.

15. D.O.C.C.S. further violated its agreement by prohibiting the purchase and use of charcoal to burn incense in the censers, thus reduced what should have been meaningful and bona fide congregate religious services to nothing more than a meaningless ritual without spiritual significance in violation of the First Amendment.

16. By violating its agreement, D.O.C.C.S. also brought about and maximize conflicts among imprisoned Rastafarian within D.O.C.C.S. as to the nature and contents of the congregate religious services.

17. Most, if not all of the growing number of Rastafarians within D.O.C.C.S. adhere to the ritual which D.O.C.C.S. had agreed to for over two decades, but now that D.O.C.C.S. and its employees have completely destroyed the ritual, we are spiritually under nourished and not able to fulfill our spiritual needs. We are no longer able to connect with our True and Living Go, JAH, Rastafari, to invoke his blessing, guidance and protection.

18. Further, we are not able to spiritually connect to each other, and to spiritually connect to the universe, all because D.O.C.C.C. violated the agreement, thus brought about the complete destruction of the ritual which serves as the unbilical chord which connect us to JAH, Rastafari, the Universe and to each other as Rasta Children.

19. D.O.C.C.S. may want to hide behind the security concerns in order to justify dismantling its agreement, but any such argument would be futile, as D.O.C.C.S. with its great wisdom, along with its more than qualified experts, could have taken the appropriate steps during those more than two decades to rectify any such security concerns without completely destroying the ritual which connect us to The Most High, JAH, Rastafari, the Universe and to each other.

20. D.O.C.C.S. may also wants to argue that it has consulted with Rastafarian Elders and other experts before it decided to destroy our rituals, but such argument would be futile, as there are many who called themselves Rasta, yet not seeing Emperor Haile Selassie I as the True and Living God. Therefore, they will never, and will not be able to see, feel or understand our connection with JAH Rastafari, the Universe and to each other through the rituals which D.O.C.C.S. has totally destroyed.

21. D.O.C.C.S. may also wants to argue that it had consulted with the current Rastafarian Chaplain or other Rastafarian authority to seek their approval in the destruction of the ritual it had previously agreed to for over two decades, but such argument would be equally futile, as the Lower Court in the Benjamin v. Couglin, 708 F. Supp. 570 (S.D.N.Y. 1989) clearly states, that the reasons for the outside sponsor: "Is not to enforce doctrinal conformity ... but to asure that the inmates meeting serves its professed religious purpose. ..." Thus, any agreement with the destruction of the rituals we followed for over two decades is clearly an agreement that our current Congregate Religious Services are not serving "it professed religious purposes". Instead, it spiritually disconnected us from

JAH, the Universe and each other.

22. Further, as Jesus the Chirst had said, he did not come to destroy the Laws of Moses--by analogy, any and all Rastafarian Chaplain or Free World-Sponsor who succeeded Abuna Foxe, should not be seen as an accomplice with D.O.C.C.S. to destroy a workable ritual which spiritually connect us to JAH, the Universe and to each other.

## ACTION REQUESTED

That D.O.C.C.S. agree and acknowledge that its actions as described above are;

(a)  arbitrary and capricious;

(b)  were taken without consultation with the Rastafarian Community in violation of due process of law;

(c)  violate our religious rights guaranteed by the First Amendment of U.S. Const.

(d)  spiritually disconnected us from JAH, the Universe and to each other;

1. That D.O.C.C.S. should restore the use of natural candles forthwith;

2. That D.O.C.C.S. should forthwith refrain from prohibiting the purchase of charcoal;

3. That D.O.C.C.S. should forthwith revive the ritual it had destroyed.

# EXHIBIT

# E

| New York Corrections and Community Supervision | Grievance Number OVF-10240-15 | | Desig Code D/16 | | Date Filed 2/3/15 |
|---|---|---|---|---|---|
| | Associated Cases | | | | |
| ANDREW M CUOMO    ANTHONY J ANNUCCI | | | | | Hearing Date 5/13/15 |
| | Facility Otisville Correctional Facility | | | | |
| INMATE GRIEVANCE PROGRAM CENTRAL OFFICE REVIEW COMMITTEE | Title of Grievance Allow Candles/Frankincense/Myrrh | | | | |

## GRIEVANT'S REQUEST UNANIMOUSLY ACCEPTED IN PART

Upon full hearing of the facts and circumstances in the instant case, the action requested herein is hereby accepted only to the extent that CORC upholds the determination of the Superintendent for the reasons stated.

CORC notes that one cone or two sticks of incense may be used during congregate worship, and that frankincense and myrrh are acceptable in accordance with the 2015 Religious Holy Day Calendar. It is also noted that two electric candles may be used during congregate worship, and may be substituted by candles with a flame only if staff or volunteers are officiating. CORC has not been presented with any compelling reason to revise present procedures and finds insufficient evidence that the greivants religious rights were violated.

SLE/

---
---

# EXHIBIT

# F

FORM 2131E (REVERSE) (REV. 6/06)          NISBETT #94A4161, ETC.

' Response of IGRC:

10831-16

FULL COMMITTEE: ACTIONS REQUESTED ARE NOT THE PURVIEW OF THIS FACILITY OR ANY OTHER, BUT
MUST BE ADDRESSED THROUGH CENTRAL OFFICE.

Date Returned to Inmate ____11--9-16____    IGRC Members _____

Chairperson _____                    _____

                                                   Michelle Weber, aRA

                                                   _____ 16 μ

Return within 7 calendar days and check appropriate boxes. *

[✓] I disagree with IGRC response and wish to        [ ] I have reviewed deadlocked responses.
    appeal to the Superintendent.                         Pass-Thru to Superintendent

[ ] I agree with the IGRC response and wish to       [ ] I apply to the IGP Supervisor for
    appeal to the Superintendent.                         review of dismissal

Signed ___Wilfred McPherson___                       ___11-11-16___
                Grievant                                     Date

        _____                          _____
        Grievance Clerk's Receipt                            Date

_____

*To be completed by Grievance Clerk.*

    Grievance Appealed to the Superintendent _____
                                                    Date

    Grievance forwarded to the Superintendent for action _____
                                                                Date

*An exception to the time limit may be requested under Directive #4040, section 701.6(g).

# EXHIBIT

# G

| NEW YORK STATE Corrections and Community Supervision | GRIEVANCE NO. OVF-10831-16 | | DATE FILED 10/28/16 |
|---|---|---|---|
| | FACILITY Otisville Correctional Facility | | POLICY DESIGNATION D |
| INMATE GRIEVANCE PROGRAM SUPERINTENDENT | TITLE OF GRIEVANCE Reinstate use of charcoal and live candles. | | CLASS CODE 16 |
| | SUPERINTENDENT'S SIGNATURE | | DATE 11/15/16 |
| GRIEVANT Consolidated Grievance of 31 inmates List attached | | DIN List attached | HOUSING UNIT List attached |

Grievants want live, wax candles and charcoal to be reinstated for use in Rastafarian Services.

This topic has been answered at both the facility level and CORC in OVF-10240-15. As such, this grievance has no merit at the facility level. The policy and procedure regarding the use of religious items used in Rastafarian services is outlined in the Religious Holy Day Calendar as published by the Division of Ministerial, Family and Volunteer Services. This publication clearly outlines approved items for use in each religious service. Per CORC, it is noted that two electric candles may be used during congregate worship, and may be substituted by candles with flames only if staff or volunteers are officiating.

Grievance is denied.

---

**APPEAL STATEMENT**

If you wish to refer the above decision of the Superintendent please sign below and return this copy to your Inmate Grievance Clerk. You have seven (7) calendar days from receipt of this notice to file your appeal. *Please state why you are appealing this decision to C.O.R.C.

See Attachment

Carlton Walker
GRIEVANT'S SIGNATURE                                      11/18/16
                                                          DATE

GRIEVANCE CLERK'S SIGNATURE
                                                          DATE

*An exception to the time limit may be requested under Directive #4040, section 701.6 (g)
Form 2133 (02/15)

List of Consolidated Grievant's for Grievance OVF-10831-16

| | | | |
|---|---|---|---|
| 1. | McPhearson | 93B1553 | 122-2 |
| 2. | Walker | 85A1559 | 111 |
| 3. | Nisbett | 94A4161 | 111 |
| 4. | Pack | 14A3827 | 113 |
| 5. | Jackson | 95A2578 | 114 |
| 6. | Murray | 98A1742 | 123-1 |
| 7. | Ledger | 08A3404 | 111 |
| 8. | Sheppard | 13B0593 | 122-1 |
| 9. | Sampson | 00A6230 | 122-2 |
| 10. | Reilly | 97A7337 | 122-2 |
| 11. | Snow | 94A2666 | 113 |
| 12. | Gilliam | 02A1262 | 112 |
| 13. | Andrews | 12A3843 | 115 |
| 14. | Fagan | 95A3539 | 122-2 |
| 15. | Fagan | 14A0444 | 122-2 |
| 16. | Tiwane | 13A2124 | 122-2 |
| 17. | Pascal | 80B1082 | 122-2 |
| 18. | Boney | 12A5004 | 113 |
| 19. | Maharas | 01A3424 | 123-1 |
| 20. | Foster | 05A4211 | 123-1 |
| 21. | Wallace | 09A2300 | 112 |
| 22. | Banks | 87A1614 | 113 |
| 23. | Grant | 91A0137 | 124-1 |
| 24. | Levers | 89A5723 | 123-1 |
| 25. | Philpotts | 07A5430 | 115 |
| 26. | Casimir | 14A5132 | 122-1 |
| 27. | Alexander | 83B2845 | 112 |
| 28. | Husband | 08A5839 | 124-2 |
| 29. | Sylvestre | 10A4731 | 124-2 |
| 30. | Johnson, T. | 13A3959 | 111 |
| 31. | Butcher | 11A1367 | 112 |

GRIEVANCE No. OVF-10831-16

APPEAL STATEMENT

1. The decision is professing ignorance to the central points of my Grievance Complaint, which are laid out in Paragraph 1 and 2, as well as in Paragraph 14 through Paragraph 22. Those paragraphs illuminate D.O.C.C.S. abrogation of its agreement with the Rastafarian Community, and the resulting injury which I have suffered, and continue to suffer. Each new day without "wax candles and charcoal .... for use in Rastafarian Services", constitute a new injury to me and a new violation of my religious rights.

2. A portion of the second paragraph of said Grievance Decision states the following:

> "This topic has been answered at both the facility level and CORC in OVF-10240-15. As such, this grievance has no merit at the facility level.

3. I have not seen any previous decision by the Facility concerning this topic. However, I have seen the decision of CORC dated May 13, 2015 under Grievance No. OVF-10831-15, and it magnifies D.O.C.C.S. abrogation of its agreement and the resulting injury which I suffered and continue to suffer. Part of said decision by CORC read as follows:

> "CORC notes that one cone or two sticks of incense may be used during congregate worship, and that frankincense and myrrh are acceptable in accordance with the 2015 Religious Holy Day Calendar. It is also noted that two electric candles may be used during congregate worship, and may be substituted by candles with flame only if staff or volunteers are officiating. CORC has not been presented with any compelling reason to revise present procedures and finds insufficient evidence that the greivants religious rights were violated."

4.    CORC decision which is quoted above, upon which the Facility relied to deny my Grievance has ignored three important issues, two of which are outlined in Paragraphs 9 and 11 of my Grievance Complaint. Both paragraphs explained the following:

"9.    Though most, if not all of the Rastafarian Brethrens who fought to have D.O.C.C.S. recognized Rastafarians as a bona fied religion considered themselves to be Nyahbinghi Set, they agree, as well as D.O.C.C.S., to accept the rituals offered by the Church of Haile Selassie I, as it was the only Rastafarian ritual that would fit within D.O.C.C.S. security concern for Rastafarian Congregate Religious Services, as well as because the rituals fulfill the imprisoned Rastafarian spiritual needs."

"11.    Thus, the rituals and liturgical materials provided by The Church of Haile Selassie I for Congregate Religious Services 'are laid down in the Bible and are not meant to be added to, diminished, or otherwise altered by man', let alone, D.O.C.C.S.. It is for this reason why Abuna Foxe and other representatives of the Church of Haile Selassie I, educate and trained many imprisoned Rastafarians in the use and burning of candles; the use and burning charcoal and incense in the Censer as an integrated part of the ritual for Congregate Religious Service."

5.    The third issue which the CORC decision ignored is that the "one cone or two sticks of incense" as oppose to frankincense

and myrrh is not an acceptable part of the pure ingredients of the religious ritual of the Church of Haile Selassie I. Neither D.O.C.C.S. nor its personnel posses the religious authority to change the religious ritual which I chose to follow and practice due to the strength of its spiritual significance during congregate religious services, and then impose that change upon me.

6.    None of the video tapes and liturgical materials provided to D.O.C.C.S. and the imprisoned Rastafarian by the Church of Haile Selassie I concerning congregate religious services, revolve around "one cone or two sticks of incense" to be used by imprisoned Rastafarians in congregate religious services. The "one cone or two sticks of incense" which D.O.C.C.S. are imposing upon me are inconsistent with the Prayer of the Incense as laid out on Page 11 of the Liturgical Book, in which I am required to invoke the blessing, guidance and protection of "Elohim Sabboath, through the use and offering "from me this 'Herb this grain of incense as the Earth is the [Lord] Adoniai and its' fullness thereof, let this Herb, this grain of incense become the Might of the Trinity – which will intercede for our salvation."

7.    "O' Elohim Sabboath I offer unto thee incense with Herb, all my clothing smell of Herb and myrrh and aloes cassis. Let my prayer set before you as the Sun. <u>Again I offer unto thee this pure Herb and incense</u> for the remission of my sin and sins and trespasses of thy people..."

8.    CORC is clearly professing ignorance of the distinguishable difference between "grain of incense" and "pure Herb and incense", and how "the grain of incense" is used during congregate religious

service on the one hand, and "one cone or two stick of incense" on the other hand. They just cannot work. They are like oil and water which never mix. The Prayer of the Incense does not authorized me to ask Elohim Sabboath to accept "one cone or two stick of incense" to "become the Might of the Trinity – which will intercede for our salvation." It does not authorized me to offer "one cone or two sticks of incense" "for the remission of my sin and sins and trespasses of thy people."

9.    The Facility did not take into consideration paragraph 9 and 11 of my Grievance Complaint which are quoted above. Instead, the Facility directed its focus on CORC decision in question, a portion of which the Facility enshrined in its current decision as follows:

> "Per CORC, it is noted that two electric candles may be used during congregate worship, and may be substituted by candles with flames only if staff or volunteers are officiating."

10.    This current decision by the Facility which is quoted above, clearly confirmed that D.O.C.C.S. abrogated its agreement, and in doing so brought about my injury. Moreover, it is a known fact, even before Abuna dimitted office, that the imprisoned Rastafarians do not have any "staff or volunteers" to officiate congregate religious services.

11.    The Facility and CORC ignored the fact that the Benjamin case has explained the great difficulties which D.O.C.C.S. and the imprisoned Rastafarians had been through in order to find a person to be the Free-World Sponsor, and that it had been determined more than two decades ago in the Benjamin case, that "It is not the presence or absence of the sponsor at the service that is the concern but rather

the availability of an outside ministerial authority in religious matters."

12. Thus, by now declaring that "congregate worship ... may be substituted by candles with flames only if staff or volunteers are officiating", with the full knowledge that there has never been any staff or volunteers available to officiate, except when Abuna or his assistants would sporadically showed up at certain facilities for services, is a clear admission by D.O.C.C.S. and the Facility, that D.O.C.C.S. abrogated the agreement it made with the Rastafarian Community concerning congregate religious services, and in so doing, has injured and continue to cause injury to me.

# EXHIBIT

# H

Ras Tafari Holy Days and Their Significance

January 7:   **Ethiopian Christmas Day** - Christianity has documented in Ethiopia since the baptism of the Ethiopian Eunuch by Philip, one of the original 12 Disciples of the Christ. The Ras Tafari Faith Movement regard Blacks as the Israel/Jews of the Bible and Ethiopian Christmas Day is a Holy Day celebrated and recognized by Mansions, Houses and Organs of Ras Tafari.

March 1:   **Battle of Adwa Victory** - A significant Holy Day of the Ras Tafari Faith often referred to as "Right over Might" with Emperor Menelik, the First, leading Ethiopia's first defeat of Italy and setting the stage for the Power of the Holy Trinity in Emperor Haile Selassie I to save Ethiopia's Freedom from Italy's second attempt under Mussolini on May 5th to rob Ethiopia as the only African country to have never been colonized. This Holy Day is recognized by Mansions, Houses and Organs of Ras Tafari.

April 3:   **Holy Mother Empress Menen Day** - Birthday of the Holy Mother of the Ras Tafari Faith. On the Ethiopian calendar Her Imperial Majesty's birthday is Megabit 25th which is April 3rd on the Gregorian calendar. Because Megabit is roughly equivalent to the Month of March, historically the Empress Menen celebration started on March 25th (in honor of Women History and Social Work Month) with delivery of social services in communities, celebrations, feasts and Nyahbinghi lasting till the official date of April 3rd. Holy Day recognized by Mansions, Houses and Organs of Ras Tafari.

April 21:   **Gcounation Day aka Groundation Day** – April 21, 1966 Emperor Haile Selassie I the First Emperor Haile Selassie I the First, Ethiopian Airlines plane burst through the clouds and touched down on the *ground* of the Palisadoes Airport in Kingston, Jamaica. Although the government of Jamaica had provided a red carpet for His Imperial Majesty, Emperor Haile Selassie I to walk on, he refused to walk on the red carpet on the way to his limousine; choosing instead to walk on the earth and ground, in fulfillment of his title of Earth's Rightful Ruler and the Foundation (Groundation) of the Ras Tafari Faith. Holy Day recognized by all Mansions, Houses and Organs of Ras Tafari.

May 5:   **Liberation Day aka Fasika (Passover)** – Emperor Haile Selassie I the First triumphant re-entry into Ethiopia, after his historic speech as *the Conscience of the World* to the League of Nation in Geneva. This Holy Day celebrates the Power of the Holy Trinity in Emperor Haile Selassie I saving of Ethiopia's Freedom from Italy's second attempt under Mussolini to defeat and rob Ethiopia of its historic reputation as the only African country to have never been colonized. This Holy Day is recognized by Mansions, Houses and Organs of Ras Tafari.

May 25:   **Africa Day** – Emperor Haile Selassie I the First hosted in Ethiopia the 31 Heads of State of then independent countries of Africa and was declared by them as the Father of African Unity at the successful Founding of Organization of African Unity (OAU--now known as African Union (AU)) on May 25, 1963. Of significance to the Ras Tafari Faith is that the AU is the vehicle to facilitate their Repatriation -- a major tenet in the Ras Tafari Faith. Holy Day recognized by Mansions, Houses and Organs of Ras Tafari.

June 16:   **Patriarch Leonard Percival Howell Day** - An eye-witness (with a U.S. Navy Admiral) to the November 2nd 1930 Coronation of Emperor Haile Selassie I the First, is one of the first to preach the divinity of His Majesty as the fulfillment of Prophet Marcus Garvey prophecy for the crowning of Christ in Ethiopia. His teachings helped develop the theology of the Ras Tafari Faith and he founded the Pinnacle Commune in the hills above Kingston as the first indigenous all-inclusive Ras Tafari community. Pinnacle is now recognized by the United Nation as a Heritage Site. Leonard P. Howell is also known as the Gong and inspired the Honorable Robert (Bob) Marley to assume the title of "Tuff Gong!" Holy Day recognized by Mansions, Houses and Organs of Ras Tafari.

July 16:    <u>Constitution Day</u> – Commemorates Emperor Haile Selassie I the First implementing Ethiopia's first constitution in 1931, abolishing Slavery; convening a Parliament and preparing the people to participate in its governance. This Holy Day is recognized by Mansions and Organizations of the Ras Tafari Faith as part of their culture and heritage as Ethiopians. Celebrations often take the form of presentations after spiritual service.

July 23:    <u>RasMas (Christmas in July</u> – Commemorates fulfillment of biblical prophecy as Emperor Haile Selassie I the First birth on earth as the Divine Deity called Jah (Psalms 68:4KJV), as the Returned Christ (Yeshua/Jesus) in His Second Advent (Coming) in the flesh of Ras Tafari as Christ in His Kingly Character with the fullness of the Power (Haile in Amharic) of the Holy Trinity (Selassie in Amharic)

August 17:    <u>Prophet Marcus Mosiah Garvey's Birthday</u> –August 17th commemorates the Birthday of Marcus Garvey, who preached a belief in the God of Ethiopia, predicted the crowning of a King in Africa as the returned Christ, and instigated the 'Back to Africa' movement of Repatriation – a major tenet in the Ras Tafari Faith. The November 2nd 1930 Coronation, witnessed by Patriarch Leonard Percival Howell, with 72 nations in attendance also witnessing the imparting of the Christ titles of King of kings, Lord of lords, Conquering Lion of the Tribe of Judah seen as a fulfillment of Prophet Marcus Mosiah Garvey's prophecy. Holy Day recognized by all Mansions, Houses of Ras Tafari.

October 7    <u>Nequest Day/Negus Day aka Christ in His Kingly Character</u> - A Holy Day observed on October 7th by the Ba Beta Church of Haile Selassie I. October 7 is recognized by all Mansions, Houses and Organs of the Ras Tafari Faith because it commemorates the Coronation of Ras Tafari on October 7, 1928 as Negus, i.e. King. This Crowning started the process for the fullness of King Ras Tafari as the returned Christ and culminated in the second Coronation on November 2, 1930 with the full titles promised and prophesied for the Return of Christ as King of kings, Lord of lords, Conquering Lion of the Tribe of Judah, Defender of the Christian Orthodox Faith.

November 2:    <u>Coronation Day aka Transfiguration Day</u> - Commemorates and celebrates when His Imperial Majesty Emperor Haile Selassie I the First was crowned for the 2nd time in HIS *Transfiguration* from Negus (King) to Negus Negast (King of kings). The date fulfills prophecy about the return of Christ in the Trinity as Messiah on Earth to those called by His first earthly kingship name of Ras Tafari. Holy Day recognized by all Mansions, Houses of Ras Tafari.

<u>Note on Ras Tafari Holy Days Observances and Celebrations:</u>
Emperor Haile Selassie I the First has left the Sons and Daughters of the Ras Tafari Faith principles and practices through His Speeches. One such speech emphasizes that Religion is personal between God and the Believer. Therefore, as in most if not all religions, there are no two individuals, Ras Tafari Mansions, Houses or Organs who celebrate and observe the Ras Tafari Holy Days in exactly the same way with the same practices, rituals or ceremonies. Nyahbinghi, the Foundation Mansion of the Ras Tafari Faith holds Nyahbinghi Services for all of the above dates except July 16 and October 7. However, there are Organs and Houses of Ras Tafari that do hold 'Binghi Services called *Ises (Praises)* on those dates, while others have presentations/workshops to commemorate those dates.

Submitted April 14, 2014 by:
*Queenmother Chaplain Stewart*